Case 1:14-cv-02554-WYD-MJW   Document 1   Filed 09/15/14   USDC Colorado   Page 1 of 14


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-_____-___-___

SETH KAPLAN,

    Plaintiff,

v.

NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING, f/k/a RESURGENT MORTGAGE SERVICING

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Seth Kaplan, through his undersigned counsel, CoakleyKrol, LLC, submits his Complaint and Jury Demand as follows:

**PARTIES**

1. Plaintiff Seth Kaplan is a Colorado resident with an address of 21412 East Crestridge Place, Centennial, Colorado, 80015 (the "Home").

2. Defendant Shellpoint Mortgage Servicing ("Shellpoint") is an operating division of New Penn Financial, LLC. New Penn Financial, LLC has a principal place of business at 4000 Chemical Road, Suite 200, Plymouth Meeting, PA, 19462.  Its registered agent in Colorado is National Registered Agents, Inc., 1675 Broadway, Suite 12, Denver, CO 80202.  Upon information and belief, Shellpoint is the successor in interest by merger to Resurgent Mortgage Servicing ("Resurgent").

## JURISDICTION AND VENUE

3. This Court has original Federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et. seq. ("FDCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq. ("RESPA") and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et. seq.  This Court also has original diversity jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1332 because Plaintiff and Defendant have complete diversity and Plaintiff seeks damages over the jurisdictional amount.  In the alternative, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(b)(2) because the acts or omissions described herein relate to a mortgage loan on property that is situated in this district.

## GENERAL ALLEGATIONS

5. Effective on or about December 1, 2012, servicing on a mortgage loan secured by the Home was transferred from Bank of America, N.A. ("B of A") to Resurgent Mortgaging Servicing ("Resurgent").

6. At the time the loan was transferred to Resurgent, it was in default.

7. On or about January 25, 2013, Resurgent sent Mr. Kaplan a "Notice of Default and Intent to Accelerate."  Resurgent acknowledged in that correspondence that it is a debt collector as that term is defined by the Federal Fair Debt Collection Practices Act.

8. Mr. Kaplan attempted to contact Resurgent and was directed to a Mr. Ronnie Brazil. Mr. Kaplan left numerous telephone messages for Mr. Brazil that were not responded to.

9. On or about April 1, 2013, Resurgent sent correspondence to Mr. Kaplan seeking payment on the loan. Resurgent threatened Mr. Kaplan that it would seek a deficiency if he did not pay his mortgage, although this was not an action it intended to take, and could not legally take. Resurgent also falsely represented that it was prepared to offer several options to Mr. Kaplan to resolve the debt and/or cure the deficiency, such as a loan modification, short sale, or deed in lieu of foreclosure.

10. On or about July 10, 2013, Mr. Kaplan received correspondence from the Castle Law Group ("Castle"). In this correspondence, Castle identified the Bank of New York Mellon ("BNY") as the holder of the debt and indicated that Castle was attempting to collect the debt on BNY's behalf.

11. Mr. Kaplan left numerous telephone messages with Castle that were not responded to.

12. On or about September 3, 2013, Resurgent sent Mr. Kaplan a Notice of Default and Acceleration in which it falsely represented that it "would like to explore options that may be available to help preserve [Mr. Kaplan's] home ownership."

13. On or about November 2, 2013, Castle posted a "Notice of Opportunity for Foreclosure Deferment" on the door of the Home. The notice advised Mr. Kaplan to contact a HUD certified housing counselor by November 22, 2013 to see if he qualified for a 90 day foreclosure deferment.

14. Mr. Kaplan first met with a HUD certified counselor on or about November 4, 2013.

15. On or about December 18, 2013, the HUD approved counselor concluded Mr. Kaplan would qualify for a loan modification and issued a "Certificate of Qualification". As reflected by the Certificate of Qualification, Mr. Kaplan had provided all necessary documents to be considered for a loan modification and was qualified.

16. On or about December 19, 2013 Mr. Kaplan made the foreclosure deferment payment required by C.R.S. § 38-38-805(2).

17. Under C.R.S. § 38-38-805(1), Resurgent had a duty to negotiate the terms of the debt obligation with Mr. Kaplan upon notice from HUD.

18. On or about December 20, 2013 and December 23, 2013, Resurgent sent correspondence to Mr. Kaplan stating:

> We have assigned a Specialist to assist you throughout the Loss Mitigation process concerning your mortgage loan. We will perform an evaluation of your financial condition and determine your qualifications for all alternatives that may be applicable for this account. Should you have any questions, you may contact Samuel Chapman directly.

19. The statements in the December 20, 2013 and December 23, 2013 correspondence were false. Resurgent never determined Mr. Kaplan's qualifications, never evaluated his financial condition, and never notified him of alternatives that may be available. Samuel Chapman did not return telephone calls and otherwise made no effort to evaluate Mr. Kaplan's financial condition, determine qualifications for alternatives, or even discuss the loan with him or negotiate, as required by C.R.S. § 38-38-805(1).

20.     On or about January 23, 2014, Resurgent returned the payment Mr. Kaplan had made under C.R.S. § 38-38-805(2). Resurgent demanded Mr. Kaplan pay the entire deficiency on the loan.

21.     On or about January 24, 2014, Resurgent sent correspondence to Mr. Kaplan falsely stating that it was "committed to helping [Mr. Kaplan] retain [his] home" and would evaluate Mr. Kaplan for a loss mitigation program. It also falsely represented to Mr. Kaplan that "no foreclosure sale will be conducted and you will not lose your home during the evaluation period."

22.     On or about January 25, 2014, Resurgent sent a "Notice of Default and Intent to Accelerate" to Mr. Kaplan, again demanding that he pay the entire deficiency. Resurgent also represented that it would not delay foreclosure action on the Home. Resurgent again asked Mr. Kaplan to contact it to discuss alternatives to foreclosure.

23.     Mr. Kaplan continued to try to contact Resurgent on the telephone, but his calls were not returned.

24.     On or about February 13, 2014, Resurgent sent correspondence to Mr. Kaplan falsely representing that he had not provided Resurgent with all the documents necessary to be considered for a loss mitigation program. The correspondence failed to identify the purportedly missing documentation or give Mr. Kaplan time in which to provide them.

25.     Mr. Kaplan again tried to reach Mr. Chapman numerous times but his calls were not returned.

26. On or about February 14, 2014, Mr. Kaplan was notified by Resurgent and Shellpoint that Resurgent was acquired by Shellpoint and that Shellpoint would be the new servicer for the loan.

27. On or about March 4, 2014, Shellpoint sent correspondence to Mr. Kaplan falsely representing that it had not received all required documentation and indicating that Mr. Kaplan had to provide it by March 18, 2014.

28. On or about March 7, 2014, Shellpoint returned another foreclosure forbearance payment Mr. Kaplan had sent in as required by C.R.S. 38-38-805(2).

29. On or about March 13, 2014, Shellpoint sent notice to Mr. Kaplan falsely representing that the property would be sent to foreclosure on March 28, 2014.

30. On or about April 4, 2014, Mr. Kaplan re-submitted documentation to Shellpoint.

31. On or about April 17, 2014, Castle sent a Notice of Hearing indicating the Rule 120 hearing would be held on May 12, 2014.

32. On April 22, 2014 an updated complete set of documents were sent in by Mr. Kaplan.

33. On or about April 24, 2014, Shellpoint sent Mr. Kaplan correspondence again falsely representing that it was "committed to helping [Mr. Kaplan] retain [his] home." Shellpoint also falsely represented that it was evaluating his loan modification application and that it would expedite the process to determine eligibility in advance of a scheduled foreclosure sale date of June 4, 2014. Shellpoint also falsely represented that Mr. Kaplan would not lose his home during the evaluation period and that if a modification was denied, Mr. Kaplan would have

a "30 day review period" and that "no foreclosure sale will be conducted during this 30-day review period."

34. On or about April 25, 2015, Shellpoint sent two identical letters acknowledging receipt of a complete loss mitigation package from Mr. Kaplan. Shellpoint falsely stated that the Home "will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure process has already been initiated."

35. On or about April 25, 2014, Shellpoint sent correspondence to Mr. Kaplan indicating it was assigning Samuel Chapman. Mr. Kaplan left a number of voicemail messages for Mr. Chapman that were never returned.

36. On or about April 28, 2014, Shellpoint sent correspondence to Mr. Kaplan indicating that "Samuel Chapman will perform an evaluation of [Mr. Kaplan's] financial condition and determine [his] qualifications for all alternatives that may be applicable for this account." Mr. Chapman did not perform an evaluation of Mr. Kaplan's financial condition and did not determine his qualifications for alternatives.

37. On May 16, 2014 Shellpoint requested the two most recent bank statements from Mr. Kaplan and a letter of explanation for any deposit over $1,000. Mr. Kaplan sent the two bank statements.

38. On or about May 30, 2014, Shellpoint sent correspondence to Mr. Kaplan stating,

> Shellpoint has reviewed your request for a loan modification under the Home Affordable Modification Program ("HAMP") in addition to other loss mitigation options. Shellpoint is unable to offer you loss mitigation options because you did not provide us with the documents requested.

This statement was false, as both the HUD counselor and Shellpoint had previously indicated Mr. Kaplan sent in all required loan documentation. The correspondence was a notice of right to cure required by C.R.S. § 5-5-110 and stated that Mr. Kaplan had until June 29, 2014 to cure the default. C.R.S. § 5-5-111 allows a consumer 21 days to cure a default.

39. On June 4, 2014, the Home was sold at a public auction to a third party, Beauly, LLC without affording Mr. Kaplan an opportunity to cure as promised by Shellpoint and required by Colorado law, and without allowing Mr. Kaplan the opportunity to appeal the modification decision as afforded by Federal law.

40. Following the sale, Mr. Kaplan hired counsel to get the illegal foreclosure sale set aside. Shellpoint refused.

**FIRST CLAIM FOR RELIEF**
(Fair Debt Collection Practices Act - 15 U.S.C. § 1692 *et. seq.*)

41. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

42. Mr. Kaplan is a consumer as that term is defined by the FDCPA.

43. The debt is a consumer debt as defined by the FDCPA.

44. Shellpoint is a debt collector as that term is defined by the FDCPA. Resurgent was a debt collector.

45. At the time Shellpoint and Resergent were taking collection action against Mr. Kaplan, he had no personal liability on the debt because it had been discharged in bankruptcy.

46. Shellpoint and Resurgent violated the FDCPA as described above by making false and misleading representations with regard to the character, amount and legal status of the debt,

engaging in unfair and unconscionable practices, and by engaging in conduct, the natural consequences of which were to harass, oppress and abuse plaintiff.

47. As a result, Mr. Kaplan has suffered both economic and non-economic damages.

## SECOND CLAIM FOR RELIEF
(Real Estate Settlement Procedures Act - 12 C.F.R. § 1024.41)

48. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

49. Defendant Shellpoint is, and Resurgent was, the servicer of a federally related mortgage loan, as those terms are defined by RESPA.

50. Mr. Kaplan is a borrower as that term is defined by RESPA.

51. Shellpoint and Resurgent violated the servicing provisions of RESPA Regulation X, 12 C.F.R.§1024.41 as described above by, *inter alia*,

    a. failing to exercise reasonable diligence in obtaining documents and information to complete the loss mitigation application;

    b. failing to promptly review the loss mitigation application to determine it is complete or incomplete and failing to notify Mr. Kaplan in writing within five days that the application was complete or incomplete;

    c. to the extent the Defendant contends loss mitigation application was incomplete (and Plaintiff would contend it was not), by failing to timely notify Plaintiff specifically what additional documents and information were required;

    d. failing to evaluate Mr. Kaplan's application within 30 days;

    e. failing to allow Mr. Kaplan time to provide additional information, to the extent the Defendant contends additional information was required;

    f. failing to provide specific reasons for why the application was denied;

    g. moving for foreclosure judgment and order of sale after receiving a completed application; and,

    h. moving forward with the foreclosure sale prior to the borrower being permitted to appeal the determination.

52. As a result of these violations, Mr. Kaplan suffered economic and non-economic damages.

## THIRD CLAIM FOR RELIEF
(Equal Credit Opportunity Act - 15 U.S.C. § 1691 *et. seq.*)

53. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

54. Mr. Kaplan is a consumer as that term is defined in the ECOA.

55. Shellpoint is, and Resurgent was, a "creditor" as defined in the ECOA because it regularly extends, renews, or continues credit and/or regularly arranges for the extension, renewal, or continuation of credit, and/or is an assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

56. Mr. Kaplan submitted a complete loan modification application made in accordance with the procedures used by Resurgent and Shellpoint for the type of credit requested.

57. Shellpoint and Resurgent violated the ECOA by failing to notify Mr. Kaplan of any action on the application within 30 days of the receipt of Mr. Kaplan's completed application for credit.

58. As a result of the above alleged ECOA violations, Shellpoint is liable to Mr. Kaplan for his actual damages, for punitive damages of $10,000 per violation of ECOA, reasonable attorney fees and costs of litigation.

**FOURTH CLAIM FOR RELIEF**
(Colorado Consumer Protection Act - C.R.S. § 6-1-101 *et. seq.*)

59. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

60. Shellpoint and Resurgent engaged in unfair and deceptive trade practices in the course of their business making and servicing mortgage loans.

61. Shellpoint and Resurgent engaged in an unfair or deceptive trade practice by falsely notifying Mr. Kaplan regarding the status of his loan modification application.

62. Shellpoint and Resurgent engaged in an unfair or deceptive trade practice by making false statements in the course of negotiating a mortgage loan.

63. Shellpoint and Resurgent engaged in an unfair and deceptive trade practice by failing to comply with C.R.S. § 38-38-805.

64. Upon information and belief, Shellpoint and Resurgent sent similar form letters to other consumers and the general public falsely informing them of their loan modification status and has no reasonable policies or procedures in place to prevent consumers from being falsely

informed regarding the status of loan modifications. These actions have a significant public impact.

65. As a result, Mr. Kaplan suffered both economic and non-economic damages.

## FIFTH CLAIM FOR RELIEF
(Fraudulent Misrepresentation)

66. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

67. As described with particularity above, in from April of 2013 through May of 2014 Shellpoint and Resurgent made numerous false representations in writing to Mr. Kaplan that it would work with him in good faith to find an alternative to foreclosure.

68. Upon information and belief, Shellpoint and Resurgent intended to mislead Mr. Kaplan and knew or should have known its representations were false.

69. Mr. Kaplan relied on these representation, and others, by *inter alia,* not taking steps to cure the default and by making financial plans in reliance on Shellpoint and Resurgent's representations.

70. Shellpoint and Resurgent's actions caused economic and non-economic damages to Mr. Kaplan.

## SIXTH CLAIM FOR RELIEF
(Negligence *per se*)

71. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

72. Shellpoint and Resurgent intentionally failed to adhere to the forbearance provisions of C.R.S. 38-38-805.

73. That section provides "[i]f a holder has received notice from an eligible borrower's foreclosure counselor that the eligible borrower qualifies for a foreclosure deferment, the holder and the eligible borrower shall negotiate the terms of the debt obligation secured by the deed of trust." C.R.S. 38-38-805(1).

74. Shellpoint also failed to allow Mr. Kaplan 21 days to cure the default as required by C.R.S. § 5-5-11.

75. The purpose of these statutes are to protect homeowners such as Mr. Kaplan, who would qualify for a loan modification and/or who had the ability to cure a default.

76. Shellpoint and Resurgent were the loan servicers and as such the agent whom the holder authorized and had the duty to negotiate the terms of the debt obligation.

77. Shellpoint and Resurgent intentionally refused to negotiate the terms of the debt with Mr. Kaplan and intentionally failed to allow him 21 days to cure after sending the notice to cure.

78. As a result, the Home was sent to foreclosure without providing Mr. Kaplan opportunity to negotiate the terms of the debt obligation.

79. As determined by the HUD counselor pursuant to C.R.S. 38-38-805, Mr. Kaplan would have qualified for a mortgage modification.

80. Shellpoint's actions caused economic and non-economic damages to Mr. Kaplan.

### SEVENTH CLAIM FOR RELIEF
(Alternative Claim for Relief - Implied Contract)

81. Mr. Kaplan incorporates all other paragraphs of this Complaint as if fully asserted herein.

82. To the extent Defendant may aver that Mr. Kaplan's claims are barred by the Economic Loss Rule, and succeed, Mr. Kaplan would assert that the correspondence described above form an implied contract to between Shellpoint/Resurgent and Mr. Kaplan to evaluate Mr. Kaplan for a mortgage loan modification in good faith.

83. Shellpoint and Resurgent breached that contract by failing to review Mr. Kaplan's application in good faith.

84. As a result, Mr. Kaplan suffered economic and consequential damages.

## JURY DEMAND

Mr. Kaplan demands trial to a jury.

WHEREFORE, Mr. Kaplan requests the Court enter judgment in his favor and against defendant and award him economic damages, non-economic damages, statutory damages, punitive and/or treble damages, attorney fees and costs, and any other relief the Court deems just under the circumstances.

Dated this 15th day of September, 2014,

COAKLEYKROL, LLC

*s/ Eric R. Coakley*

---
Eric R. Coakley, CO Bar # 34238
2373 Central Park Blvd. - Suite 100
Denver, CO 80238
coakley@coakleykrol.com
Tel. (303)803-1611